THE FAJARDO SUGAR GROWERS ASSOCIATION, Plaintiff and Appellant, *v.* VICENTE ROSA, Defendant and Appellee.

No. 9100.   Argued June 1, 1945.—Decided July 20, 1945.

*Adolfo García Veve* for appellant.  *Cruz Ortiz Stella* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

This is an action of unlawful detainer at sufferance instituted by The Fajardo Sugar Growers Association against Vicente Rosa. who had been a worker of said entity. The District Court of Humacao granted a motion for nonsuit presented by the defendant on the ground that plaintiff's evidence showed that there was a variance as to the cause of action filed, since it appeared therefrom that the defendant did not occupy the house, subject matter of this suit, at sufferance but by virtue of a verbal contract of lease and services. The lower court held that the unlawful detainer at sufferance did not lie because it was a case for the exclusive jurisdiction of the municipal court. The plaintiff appealed and maintains in this appeal that the lower court erred in deciding that the possession of the house by the defendant arose from a contractual relation and not from its mere liberality or tolerance and it alleges that the evidence which it introduced showed that the house had been delivered to the defendant purely for convenience and not by virtue of a contract.

Let us examine briefly the evidence introduced by the plaintiff.

Richard C. McConnie testified that he was the field supervisor of the plaintiff for the last 26 years; that the plain-

tiff has established a settlement in the Paulina Estate, which it owns; that the houses are occupied by the workers of the plaintiff who may only occupy them so long as they work for the plaintiff; that it was a condition of their work that "on the one hand, they should render services as workers" for the plaintiff and "that in exchange for their work they would receive their wages and the right to occupy the houses"; that the workmen do not pay any rental to the plaintiff for the houses; that the workmen who live in said houses receive a salary equal to or higher than those who live outside; that the workers who live in those houses are chosen because they are the most skillful in the ward and they are given the houses so that they may be near their work.

Rogelio Díaz, superintendent of the Paulina Estate, testified that he knew the defendant, who worked for the plaintiff and lives in one of plaintiff's houses; that he gave the house to the defendant to live in it; that the defendant does not pay anything for the house which is one of those given to the workmen "in order that they should work in the estate with more convenience for them and for us too"; that they give the houses to the workmen while they work for the company; that for the last eight months the defendant has not worked in the estate; that the witness has asked him to vacate the house which he has refused to do; that those houses are given to the workmen "for our benefit and for the benefit of the workers and of the estate"; that he gave that house to the defendant in order that he should work with the company.

The documentary evidence showed that the Paulina Estate and the houses belong to the plaintiff.

We are of the opinion that the lower court did not err in deciding that the evidence of the plaintiff showed that there was no cause of action of unlawful detainer at sufferance against the defendant.

It is unquestionable that the house was given to the defendant by reason of the contractual relation existing between him and the plaintiff association. This is clear from the evidence. When Mr. McConnie testified that the workmen could occuyy the houses so long as they worked for The Fajardo Sugar Growers Association and that when they should leave that work, the right to dwell in those houses would also cease, and that the houses were given to the most skilled laborers, and when Mr. Díaz testified that the Association gave the houses to the workmen while they worked for the estate and that they did so for the benefit of both parties, it is obvious that it was not the mere liberality or tolerance of the plaintiff which gave rise to the possession of the defendant, but the fact that it was for the mutual benefit of both parties that the defendant should be entitled to said possession.

■ Section 1477 of the Civil Code provides:

"The dismissal of field. hands, mechanics, artisans and other hired laborers to which the preceding sections refer, gives the right to dispossess them of all tools and buildings which they may occupy under the contract."

Pursuant to that Section, as the same has been construed, the property may be occupied by the employee either by reason of his position or as part of his salary depending on the contract which he might have entered into with his employer.

In commenting on § 1587 of the Spanish Civil Code. which is equivalent to the above-copied Section, Scaevola states:

"As common denominator of all the preceding numerators which compose said Section, Section 1587 provides that the dismissal of servants, whether domestic or agrarian, mechanics, artisans, and other hired laborers gives the right to the lessee (owner, employer, or contractor) to dispossess them of any implements or buildings of which they may have possession by reason of their duties. This is not exactly as it appears from the legal text; but it should be

construed thus disregarding slight criticisms of the language used.

"The doctrine established in said Section is clear and needs little explanation.

"The fact determinative of the dispossession is the dismissal, the meaning of which embraces both the active and passive modes of the termination (fair or unfair) of the contract: *when the worker leaves;* when he is discharged by the owner or employer.

"*     *     *     *     *     *     *

"The dismissal of the servants, mechanics, and hired laborers gives the right *to dispossess them of the property they occupied by reason of their employment* or as part of their compensation. Numerous decisions hold that the act of the dismissal carries with it the termination of the lease of services and in its consequence the right to dispossess the servant or employee. The procedure employed to deprive them of the possession of their dwelling rooms is the unlawful detainer proceeding. . . ." (Italics ours.) Civil Code, vol. 24, 2d. Part, pp. 63–64 (1915 ed.).

Manresa, in his *Comentarios al Código Civil,* vol. X, pp. 669–670, 4th ed. (1931), makes reference to the Spanish decisions on this point:

"According to the judgment of June 2, 1898, of the Supreme Court of Spain, *the municipal judge* has jurisdiction to take cognizance of the unlawful detainer proceeding implied in Section 1587, *because since the building is not held at sufferance, but by virtue of the lease of services and as part of the compensation therefor,* the term agreed in the contract terminates with the dismissal of the servant ·or employee, and, therefore, pursuant to subdivision 1 of Section 1562 of the Law of Civil Procedure, it is incumbent on the ᵎmunicipal judge to entertain the case, without any need of conciliation or of previous notice." (Italics ours.)

See also judgments of September 9, 1901, January 22, 1907 (106 *J.C.* 52), December 2, 1902 (94 *J.C.* 604), February 5, 1903 (*95 J. C.* 214), July 11 (*98 J. C·* 830) and December 12, 1904, January 12 (100 *J. C.* 56), May 7, July 8, (102 *J. C.* 87), August 5 and 20, 1905 (103 *J. C.* 556), March 10 and November 20, 1906 (105 *J. C.* 734), and October 28, 1907.

The court *a quo* did not err, therefore, in granting the motion for nonsuit. In *Suárez* v. *Saavedra,* 52 P.R.R. 662, 668, it was stated:

"In the insular courts there are no jury trials in civil cases. A district judge, in passing upon a motion for nonsuit, is not precluded from drawing reasonable and proper inferences from the evidence. *Rosado* v. *Ponce Ry. Light Co., supra.* In drawing such inferences, however, he should bear in mind that, as pointed out in the Rosado case 'motions for nonsuit should be considered with great caution and only granted in the clearest cases.' He should also, of course, be under no misapprehension as to the law applicable to the facts before him. If, in the instant case, it were clear that there was no mistake of law or of fact and that the result would have been the same if the motion for nonsuit had been overruled, there would be no reason for a reversal."

In the case at bar the motion for nonsuit having been denied and evidence having been introduced by the defendant, the result would have been the same inasmuch as the question raised in its answer was to the effect that "defendant occupies said house under a verbal contract of lease executed with the plaintiff by virtue of which the defendant could occupy said house so long as he worked for the plaintiff" and that is precisely what was disclosed by appellant's evidence.

The judgment appealed from should be affirmed.